## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

RAHEEM CHABEZZ JOHNSON,    )
         )
      Petitioner,      )     Case No. 7:19CV00488
         )
v.         )     **OPINION AND ORDER**
         )
**JEFFREY KISER, WARDEN,**    )     JUDGE JAMES P. JONES
**RED ONION STATE PRISON,**    )
         )
      Respondent.    )

    *Matthew L. Engle, DONOVAN & ENGLE, PLLC, Charlottesville, Virginia, for Petitioner; Rachel L. Yates, Assistant Attorney General, and Donald E. Jeffrey, III, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Respondent.*

    Raheem Chabezz Johnson, a Virginia inmate, attacks his life sentence imposed in 2012 for first-degree murder.  The respondent has filed a Motion to Dismiss Johnson's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. I find that Johnson's habeas claims are either untimely, have been procedurally defaulted, or are unmeritorious.  Accordingly, I will grant the Motion to Dismiss.

## I.

    In the early morning of April 11, 2011, Timothy Irving was shot and killed at his Lynchburg, Virginia, apartment.  Police identified then 17-year-old Johnson as a suspect, and a grand jury indicted Johnson on the following charges: (1) capital murder in violation of Va. Code Ann. §§ 18.2-30 and 18.2-31; (2) statutory burglary

with the intent to commit murder or robbery while armed in violation of Va. Code Ann. §§ 18.2-90 and 18.2-10; (3) two counts of attempted robbery in violation of Va. Code Ann. §§ 18.2-58 and 18.2-26; and (4) four counts of use of a firearm in violation of Va. Code Ann. § 18.2-53.1.  The prosecution later reduced the murder charge to first-degree murder, removing the request for capital punishment.

A jury trial was subsequently held in the Circuit Court for the City of Lynchburg, Virginia, in July of 2012.  A brief summary of the evidence presented at trial is as follows.  Tina Horsley-Robey and Timothy Irving were in bed with their young son around midnight between April 10 and 11, 2012, when someone knocked on the front door of their apartment.  Irving got out of bed, answered the door, and then returned to the bedroom to get dressed and inform Horsley-Robey that the visitor was "Little D," an acquaintance who came to the apartment "maybe once a week" to purchase marijuana.  July 16, 2012 Trial Tr. 112.[1]

Irving returned to the front door while Horsley-Robey remained in bed. Shortly thereafter, Irving appeared again in the bedroom doorway with a "look on his face [], like, oh, my God."  *Id.* at 117.  Horsley-Robey then saw Johnson, who wearing a black, puffy coat with a hood and Velcro strap across his mouth, push

---

[1]  The respondent has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts by filing the complete state court records in Johnson's case from the Circuit Court of the City of Lynchburg, the Court of Appeals of Virginia, and the Supreme Court of Virginia.

Irving back into the bedroom.  Johnson was brandishing a gun.  Because of the hood and Velcro strap, Horsley-Robey could only see a portion of Johnson's face, from his eyebrows to the top of his nose.

Johnson ordered Horsley-Robey to get on the floor.   "[H]e kept saying, give it up, give it up, give it up."  *Id.* at 119.  Johnson then looked at Horsley-Robey, who was on the floor and within arm's length of Johnson, and shot Irving.

During this exchange, Dennis Watts, or "Little D," stood at the bedroom door wearing a hoodie and mask.  His identity was more concealed than Johnson's, but Horsley-Robey was able to recognize Watts because she had known him for a few years and because she was familiar with his height, weight, and body shape.  Johnson was noticeably taller than Watts.  Watts did not brandish a gun.  Both intruders fled the apartment after Johnson shot Irving.

Later that morning, police presented a photo line-up to Horsley-Robey, and she identified Johnson as the gunman.  When Horsley-Robey came to  Johnson's picture, she covered the bottom and top of his face and told police she would "never forget [Johnson's] eyeballs."  *Id.* at 137.  At trial, Horsley-Robey testified that she did not know Johnson personally or even know his name, but that she knew who he was by his face and his body size.  She had seen him before, in fact "almost every day when [she] was at [her] mother's house."  *Id.* at 162.

The prosecutor asked Horsley-Robey if she knew a person by the name of Quinton Johnson.  During a pre-trial police interview, Johnson had told a detective that his half-brother, Quinton, was involved in the attempted robbery.  In response to the prosecutor's question about Quinton, Horsley-Robey testified that she had heard of Quinton but that she did not know what he looked like.  She stated she was confident she only saw two individuals in the apartment, the gunman — Johnson — who was the taller of the two men, and "Little D."

The jury also heard testimony from a detective about how Johnson's story changed throughout several post-shooting interviews.  Shortly after the homicide, Johnson told police he had been wearing a red hoodie the night of Irving's murder. After he was charged, Johnson confirmed that the black, puffy coat described by Horsley-Robey was his, but he stated that he had given the coat to his brother to wear on the night in question, even though Johnson's father saw Johnson wearing the coat around two the morning of the homicide.  At one point, Johnson claimed he threw the coat behind his brother's apartment.

Furthermore, Johnson initially insisted he had nothing to do with the crimes. Later, Johnson admitted he had been at the apartment, claiming he was with Watts and Quinton, but that he did not even make it to the kitchen sink when he heard a gunshot.  Thereafter, he admitted he did go into the bedroom.

Other eyewitnesses also testified about what they saw the night of Irving's murder. A cab driver, who knew Watts and had seen Johnson before, testified that she had dropped off Watts and Johnson at Horsley-Robey and Irving's apartment complex sometime after 11 p.m. on April 10, 2012. Johnson was wearing a black jacket at the time. Two other witnesses who resided at the apartment complex testified that they had seen two men, one tall and one short, near Horsely-Robey and Irving's building around midnight on the night in question.

Abdul-Malik Kahn, who was in jail with Johnson after the shooting, testified that Johnson had told him that he had pulled the trigger. Kahn also testified that it was unclear how many people were involved, but also that Johnson had said there "were definitely two" people, but there was "someone else with them that he sent away in a cab." July 17, 2012 Trial Tr. 386.

After the conclusion of the evidence, the jury convicted Johnson of all eight charged felonies.

Prior to sentencing, Johnson's counsel moved for the appointment of a neuropsychologist to examine Johnson in order to prepare for sentencing. The trial judge denied the motion, finding that Johnson did not show a "particularized need" for the expert. Aug. 15, 2012 Hearing Tr. 11. The trial court sentenced Johnson on October 5, 2012, to an aggregate sentence of life plus 42 years.

Johnson appealed to the Court of Appeals of Virginia, and then to the Supreme Court of Virginia, both of which affirmed his convictions. *Johnson v. Commonwealth*, 793 S.E.2d 326 (Va. 2016).[2] The Supreme Court refused Johnson's petition for certiorari on January 8, 2018.

Johnson then filed a state petition for writ of habeas corpus in the Lynchburg Circuit Court on March 23, 2018, in which he raised three claims:

I.    The petitioner is entitled to a new sentencing proceeding including the appointment of assistance of a mental health expert because the Supreme Court of Virginia's opinion is inconsistent with the rule established in *McWilliams v. Dunn*, 137 S. Ct. 1790 (2017);

II.   The Commonwealth concealed favorable evidence from the petitioner in violation of his constitutional rights; and

III.  The petitioner's trial counsel was ineffective for failing to move for a continuance in light of late-disclosed exculpatory information in a search warrant affidavit that the petitioner's brother (Quentin Johnson) was present in the apartment during the robbery and murder.

The circuit court dismissed his petition, and the Supreme Court of Virginia refused his petition for appeal on August 16, 2019.  The Supreme Court denied certiorari on May 26, 2020.

Johnson filed his original federal habeas petition on July 3, 2019, in which he raised five claims.

---

[2] The Court of Appeals of Virginia affirmed Johnson's conviction on March 25, 2014, and the Supreme Court of Virginia affirmed Johnson's conviction on December 15, 2016.

I.      Petitioner is entitled to a new sentencing proceeding, including the appointment and assistance of an appropriate mental health expert to conduct an individualized inquiry pursuant to *Ake v. Oklahoma*, 470 U.S. 68 (1985);

II.     Petitioner's sentence of life without the possibility of parole other than geriatric release violates the rule in *Miller v. Alabama*, 567 U.S. 460 (2012).

III.    Petitioner's constitutional rights were violated when the state court denied him the assistance of an appropriate mental health expert under *McWilliams v. Dunn*, 137 S. Ct. 1790 (2017);

IV.     The prosecution withheld exculpatory or impeachment evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963); *Kyles v. Whitley*, 514 U.S. 419 (1995); and

V.      The petitioner's trial counsel provided ineffective assistance of counsel.

Protective Pet. 9, ECF No. 1.

This court stayed the federal proceedings until final disposition of the state habeas appeal and allowed Johnson 60 days following the disposition to file an amended federal petition.

Over the course of this matter, the court granted Johnson multiple extensions to file his amended petition.  On June 2, 2020, counsel entered an appearance on behalf of Johnson and filed a Report and Prophylactic Supplement, ECF No. 9, to Johnson's original federal petition.  In that filing, Johnson's counsel submitted supplemental new claims "to ensure [the claims met] the June 3, 2020, statutory deadline for claims that were not presented in Johnson's protective habeas petition." *Id*. at 1.  Johnson's supplemental claims were as follows:

VI.   The trial court unreasonably denied Johnson's motion for the assistance of a neuropsychologist to examine Johnson's brain and provide an individualized opinion for sentencing;

VII.   Ineffective assistance of counsel in failing to properly challenge the trial court's refusal to appoint an expert neuropsychologist; and

VIII.   Trial counsel failed to reasonably challenge witness identification based solely on eyeballs.

*Id.* at 4–5.

On April 20, 2021, Johnson, by counsel, filed a second supplement to his petition, in which he brought a ninth claim:

IX.   Johnson is not guilty of any charged offense. The jury did not find him guilty, and defense counsel unreasonably failed to challenge Johnson's unlawful convictions at trial and on direct appeal.

Pet'r's Second Supp. 1, ECF No. 15.

The court's final amendment deadline extension was set for July 16, 2021. ECF No. 22. On that day, Johnson, by counsel, filed his amended petition, ECF No. 24. In this July 2021 amendment, Johnson re-asserted Claims I–V from his original petition (by incorporating a copy of the original petition into the amended petition), Claims VI–VIII from his June 2, 2020, Report and Prophylactic Supplement, and Claim IX from his April 20, 2021, second supplement, and added the following claims:

X.   Petitioner's sentence of life without possibility of parole violates the rule in *Miller v. Alabama*, to the extent it prohibits a sentence

of life in prison for a juvenile whose only opportunity for release is Virginia's geriatric-release program;

XI.  Petition is entitled to a new sentencing proceeding[], including the appointment and assistance of an appropriate mental health expert, because the state court denied him that assistance at trial, in violation of *Ake v. Oklahoma*, as construed by *McWilliams v. Dunn*.

July 16, 2021 Am. Pet. 53, 57, ECF No. 24.

Finally, on April 23, 2022, Johnson, represented by new counsel, filed a second amended petition, in which Claims I through XI were re-asserted. Johnson then provided new facts and arguments as to Claim V (ineffective assistance of counsel), which in Johnson's original federal petition had included no supporting facts or argument.[3] In this new Claim V, Johnson asserted that if this court finds that Johnson could have effectively used the material described as a *Brady* violation in Claim IV, Johnson's trial counsel was constitutionally ineffective for failing to do so or for failing to investigate or move for a continuance of the trial. Second Am. Pet. 24–31, ECF No. 44.

---

[3] Claim V was not addressed again, other than re-copying the text from the original petition, until this April 2022 filing.

II.

### A. Claims V and IX are Untimely.

The law imposes a one-year statute of limitations on federal habeas corpus petitions. That year runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Further, the time during which "a properly filed application for State post-conviction or other collateral review" is pending in state court does not count towards the one-year limit. *Id.* § 2244(d)(2).

The Supreme Court refused Johnson's petition for certiorari on direct appeal on January 8, 2018. The one-year statutory limitations period began running on that date. Johnson's petition for habeas corpus, timely filed in the state circuit court on March 23, 2018, tolled the limitations period. The limitations period began running again on August 16, 2019, when the Supreme Court of Virginia refused Johnson's state habeas appeal. The parties agree that the statutory limitations period ended on June 3, 2020, and in fact, Johnson's counsel cited that as the reason for filing the June 2, 2020, Report and Prophylactic Supplement.

Accordingly, claims filed after June 3, 2020, that did not relate back to the claims filed prior to that deadline are untimely. *Mayle v. Felix*, 545 U.S. 644, 664 (2005). In order to relate back, the original claim and post-limitations claims must be "tied to a common core of operative facts." *Id.*

In Johnson's original federal petition, he brought Claim V contending that his trial counsel provided ineffective assistance of counsel.  However, he provided no factual support for the claim, nor did he provide any argument or incorporate his state petition into any part of his federal petition.  His claim merely consisted of a single sentence stating that Johnson's trial counsel failed to provide effective assistance of counsel.  Pet. 9, ECF 1.  This vague, conclusory allegation is insufficient to survive a motion to dismiss, even for a pro se petitioner, which Johnson was at the time.  *Wiggins v. Lockhart*, 825 F.2d 1237, 1238 (8th Cir. 1987).  Johnson then filed a new Claim V on April 23, 2022, nearly two years after the statutory deadline.  Second Am. Pet. 2, ECF No. 44.  In that new claim, Johnson alleged that his trial counsel was constitutionally ineffective for failing to use information contained within a search warrant affidavit — that Johnson's brother admitted to being at the scene of the homicide  — evidence that was unsealed five days before trial.  This new Claim V does not relate back to Johnson's original, conclusory Claim V just because both claims invoke ineffective assistance of counsel.  *United States v. Gonzalez*, 592 F. 3d 675, 680 (5th Cir. 2009) ("New claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision.").  Nor does it relate back to Johnson's Claim IV, a claim that involved the prosecution's alleged conduct in failing to timely disclose the information.  The

prosecution's alleged untimely disclosure days before trial and defense counsel's allegedly deficient conduct in failing to use the then-disclosed material at trial or ask for a continuance are two separate events, both in time and type. *Mayle*, 545 U.S. at 657. Consequently, Claim V is untimely and must be dismissed.

Claim IX is also subject to dismissal. Johnson brought this claim for the first time in his April 20, 2021, second supplement, in which he alleges that the jury did not unanimously find him guilty because one juror did not clearly state whether or not the announced verdict was her verdict during the jury poll. Johnson also alleges that his trial counsel unreasonably failed to challenge Johnson's convictions at trial and on appeal. Claim IX was not raised before this second supplement nor is it based on any of the same core of operative facts in Johnson's pre-June 3, 2020, claims, and thus does not relate back. *Mayle*, 545 U.S. at 657.

Johnson argues that Claim IX is timely under 28 U.S.C. § 2244(d)(1)(C), which provides that the one-year limitation period may begin on the date on which a newly recognized constitutional right is recognized by the Supreme court it if is made retroactive to cases on collateral review. Johnson cites to *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), in support of this argument.

Johnson's position is unavailing. In *Ramos*, the Supreme Court held that the Sixth Amendment requires a unanimous verdict to support a criminal conviction in state court. But in *Edwards v. Vannoy*, 141 S. Ct. 1547, 1561 (2021), the Court held

that the *Ramos* rule did not apply retroactively on collateral review. Accordingly, 28 U.S.C. § 2244(d)(1)(C) is inapplicable.

Furthermore, Johnson makes no claim for equitable tolling of the statute of limitations for either of these claims. A petitioner is entitled to equitable tolling only if he shows that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his way to prevent timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Johnson has not alleged any extraordinary circumstances, nor are any apparent from the record. Accordingly, Claims V and IX are dismissed with prejudice.

### B. *Claims VII and VIII: Exhaustion & Procedural Default.*

The respondent argues that Johnson failed to exhaust his state remedies as to two of his ineffective assistance of counsel claims, Claims VII and VIII.

A state prisoner must exhaust his remedies in state court before seeking federal habeas corpus relief. 28 U.S.C. § 2254(b). To do so, a petitioner must inform the state courts as to the substance of the claim that state custody violates federal law, so that the state has the opportunity to correct and alleged violations. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The burden is on the petitioner to show that the state remedies have been exhausted. *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011).

In Claim VII, Johnson asserts that his counsel should have challenged the trial court's refusal to appoint an neuropsychologist and that counsel should have corrected the court's alleged misunderstanding regarding the differences between brain immaturity and intellectual disability.  In Claim VIII, Johnson contends that trial counsel failed to reasonably challenge Horsley-Robey's identification of Johnson based solely on the shooter's eyes.  Johnson did not raise these claims in state court.  Only in his federal habeas petition did he call into question his attorney's performance on these grounds.[4]  Consequently, Claims VII and VIII have not been exhausted.  *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) ("The exhaustion requirement is not satisfied if the prisoner presents new legal theories or factual claims in his federal habeas petition.").

And even if I were to excuse this failure to exhaust as Johnson asks me to do under 28 U.S.C. § 2254(b)(1)(B), the concept of procedural default is a separate limit on federal habeas review that alone bars federal review on the merits of a habeas claim.  *Gray v. Netherland*, 518 U.S. 152, 162 (1996) (indicating that a procedural bar that can give rise to exhaustion can still prevent federal habeas review unless the

---

[4]   Johnson did raise one ineffective assistance of counsel claim before the state court, but the factual basis of that claim differed from his federal Claims VII and VIII.  Br. Supp. Mot. Dismiss Ex. 2, ECF No. 36-2 (asserting ineffective assistance of counsel for failing to move for a continuance in light of allegedly late disclosed evidence, similar to Johnson's untimely federal Claim V).

petitioner can overcome the procedural default).  Thus, the relevant issue is whether Johnson has established that he is entitled to overcome procedural default.

Procedural default can occur when a prisoner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Nobles*, 127 F.3d at 420 (explaining the types of procedural default).

Section 8.01-654(B)(2) of the Virginia Code provides that habeas petitions must "contain all allegations the facts of which are known to petitioner at the time of filing and such petition shall enumerate all previous applications and their disposition.  No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition."  The factual bases underlying Claims VII and VIII were known to Johnson when he filed his state habeas petition in 2018, so they are procedurally defaulted because the state court would now find the claims procedurally barred.[5]  Accordingly, such claims are not

---

[5]  Virginia law also provides that a habeas petition attacking a criminal conviction or sentence must be brought within two years from the date of final judgment in the trial court or within one year from either the final disposition of the direct appeal or the time for filing such appeal has expired, whichever is later.  Va. Code Ann. § 8.01-654(A)(2).  Thus, the claims would also be defaulted under this provision, which constitutes an independent and adequate state bar to consideration on federal habeas.  *Weeks v. Angelone*,  176 F.3d 249, 273 (4th Cir. 1999), *aff'd*, 528 U.S. 225 (2000).

cognizable upon this federal habeas review unless Johnson can establish cause with respect to the procedural default and prejudice. *Gray*, 518 U.S. at 162.

Cause "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Here, Johnson argues that these claims are eligible for review pursuant to the exception established in *Martinez v. Ryan*, 566 U.S. 1 (2012).

The *Martinez* exception states, in part, that when a state requires a prisoner to raise an ineffective-assistance-of-trial counsel claim in a collateral proceeding, a prisoner may establish cause for default of an ineffective assistance-of-trial counsel claim when the state court did not appoint counsel in the initial-review collateral proceeding. *Id.* at 14. "[The] prisoner must also demonstrate that the underlying ineffective-assistance-of trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

The Fourth Circuit has referred to the *Martinez* standard as a "high procedural bar." *Terry v. Stirling*, 854 F. App'x 475, 476 (4th Cir. 2021) (unpublished). To invoke *Martinez*, petitioners must demonstrate a claim is substantial with reference to the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Sigmon v. Stirling*, 956 F.3d 183, 199 (4th Cir. 2020).

- 16 -

Here, Johnson has failed to overcome this high bar.  As to Claim VII, Johnson contends that his counsel was constitutionally ineffective for failing to sufficiently challenge the trial court's refusal to appoint an expert neuropsychologist at sentencing.  Johnson also argues that his counsel had a duty to clarify the difference between brain immaturity and intellectual disability and that counsel failed to identify the information in his school records that that established his particularized need for an expert.  These allegations are not a substantial showing of deficient performance under *Strickland*, which equates to performance so problematic that it falls below an objective standard of reasonableness.  466 U.S. at 687.  Here, the record shows that not only did counsel request that an expert be appointed for sentencing, but he continued to explain why such appointment was necessary after the trial judge expressed the view that he was going to deny the motion for appointment of the expert.  Aug. 15, 2012 Hearing Tr. 11.  The trial judge noted counsel's continued exceptions.  Then, counsel appealed Johnson's conviction on this ground.  *Johnson*, 793 S.E.2d at 329–30.

As for counsel's alleged duty to clarify the difference between brain immaturity and intellectual disability, Johnson cites to no portion of the record indicating the trial judge's confusion.  He merely states in a conclusory fashion that the trial judge conflated such topics.  Moreover, counsel submitted a letter to the court prior to sentencing, explaining the issue and attaching four articles about the

adolescent brain.  In that letter, counsel also explained that an expert was needed, in part, due to the information located in Johnson's school records.  Cir. Ct. R. 248–50 (Case No. CR11022622).  Based on these facts, I do not find that Johnson has made a substantial showing of deficient performance as to Claim VII.

In Claim VIII, Johnson argues that his counsel was constitutionally ineffective for failing to challenge Horsley-Robey's identification of Johnson solely by his eyes. However, the cases to which Johnson cites in support of Claim VIII are distinguishable.  In *United States v. Nolan*, 956 F.3d 71 (2d Cir. 2020), the court found that defense counsel was ineffective for neglecting to call or consult an expert to testify about the unreliability of eyewitnesses identifications "under the egregious circumstances presented in [that] case," with the "most egregious[]" being that the police potentially biased identifications by allowing the multiple victims to talk about the identification and to view the suspects social media photos.  *Id.* at 81.  Such circumstances are not present here.  In *Young v. Conway*, 698 F.3d 69 (2d Cir. 2012), not only was the suspect's face mostly covered, but so was his body.  *Id.* at 80.  Also at play in *Young* was the so-called "own-race bias," *id.* at 81, which is not alleged here.  And the identification at issue in *Young* occurred over one month after the crime, after the victim identified someone else while being shown the suspects photograph one week after the alleged act.  *Id.* at 84.

The record shows here that Horsely-Robey saw Johnson on a regular basis and that she identified Johnson the morning after the shooting. Moreover, in his closing argument, defense counsel did call into question Horsely-Robey's identification based on the circumstances of the shooting — how brief Horsely-Robey's interaction with the gunman was, the potentially poor lighting in the bedroom, and that Horsley-Robey likely was focused on the gun, not the gunman. July 17, 2012 Trial Tr. 503–06. The jury simply was not persuaded. Accordingly, I do not find that Johnson has demonstrated that counsel's treatment of Horsely-Robey's identification constitutes a substantial claim for deficient performance, performance that was so deficient as to fall below an objective standard of reasonableness, *Moore v. Stirling*, 952 F.3d 174, 185–86 (4th Cir. 2020), based on the circumstances presented in this case. Claims VII and VIII will be dismissed with prejudice because they are procedurally defaulted.

### C. Claim IV: Procedural Default.

In Claim IV, Johnson asserts that the prosecution concealed exculpatory or impeachment evidence in violation of his constitutional rights established by *Brady v. Maryland*, 373 U.S. 83 (1963). Johnson does not dispute his default but argues that his default should be excused. I find that Johnson has not overcome procedural default.

A *Brady* violation involves three components.  First, it involves favorable evidence, which includes both impeachment and exculpatory evidence.  *United States v. Bagley*, 473 U.S. 667, 676 (1985).  Second, the favorable evidence must have been suppressed by the prosecution.  However, "[n]o due process violation occurs as long as *Brady* material is disclosed to a defendant in time for its effective use at trial."  *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985).  Third, the suppressed, favorable evidence must be material, which is the case if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Bagley*, 473 U.S. at 682.   "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *Id.*

Johnson acknowledges that his *Brady* claim is procedurally defaulted,[6] so I must determine if his default is excused by a sufficient showing of cause and prejudice.  *Strickler v. Greene*, 527 U.S. 263, 282 (1999).  In the *Brady* context, the

---

[6]  "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, . . . or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice."  *Harris v. Reed*, 489 U.S. 255, 262 (1989) (internal quotation marks and citations omitted).   Here, the state habeas court dismissed Claim IV pursuant to *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), because it found that Johnson failed to assert the claim on direct appeal.  Br. Supp. Mot. Dismiss Exs. 3, 4, ECF Nos. 36-3, 36-4.  A state habeas court's dismissal pursuant to *Slayton* is an adequate and independent state law ground for default that bars federal review absent a showing of cause or prejudice.  *Wright v. Angelone*, 151 F.3d 151, 159–60 (4th Cir. 1998).

suppression of favorable evidence — one of the three elements of the *Brady* violation — can constitute cause. *Strickler*, 527 U.S. at 282; *Banks v. Dretke*, 540 U.S. 668, 693 (2004). But when the Supreme Court has found such suppression to constitute cause itself, it has been because the prosecution continued to withhold the information before and during proceedings in which the habeas claim was procedurally defaulted. *Strickler*, 527 U.S. at 282; *Banks*, 540 U.S. at 693. In other words, a state's continued misleading statements and withholding of certain evidence, the withholding of which constituted the underlying violation, was also the reason why the defendant could not have raised the underlying violation at the appropriate time to avoid default. *Strickler*, 527 U.S. at 282; *Banks*, 540 U.S. at 693.

Here, Johnson contends that the Commonwealth withheld three pieces of evidence in violation of *Brady*: (1) a search warrant affidavit containing Quinton Johnson's statement that he was at the apartment when the shooting occurred; (2) alleged undisclosed witness bargaining with Kahn, who testified at trial; and (3) alleged undisclosed witness bargaining with Wendell Franklin, who did not testify at trial. But the record shows that all three of these pieces of evidence were known to the defendant before his direct appeal to the Supreme Court of Virginia. Johnson admits that the search warrant containing Quinton Johnson's statement was made available to the defense "a few days before trial began." Am. Pet., ECF No. 24 at

10.[7]  Courts have found that mid-trial disclosures do not rise to the level of a constitutional violation in assessing the merits of *Brady* claims because the evidence could have been effectively used at later stages in the trial.  *United States v. Lawson*, 810 F.3d 1032, 1043 (7th Cir. 2016); *Smith Grading & Paving, Inc.*, 760 F.2d at 532.  Thus, it follows that a pre-trial disclosure days before trial does not amount to cause sufficient to overcome default for failing to raise a *Brady* claim on direct appeal.  And although the information about the alleged witness bargaining may not have been known until after trial, it was made known before his direct appeal concluded, as shown by the letter from Wendell Franklin to Johnson's trial counsel stamped as received on December 3, 2012, in which Mr. Franklin expressed that certain witness testimony was "cohersed" [sic] and "fabricated."  Br. Supp. Mot. Dismiss Ex. 2 at 27, ECF No. 36-2.  As such, the alleged Brady violations themselves did not prevent Johnson from raising these claims on appeal.

But even if I were to find that the alleged withholding of the material does satisfy cause, *see Walker v. Kelly*, 195 F. App'x 169, 175 (4th Cir. 2006) (unpublished) (noting that the "standard for cause should not vary depending on the timing of a procedural default") (internal quotation and citation omitted), Johnson

---

[7]  Because this document does not include sequential page numbers, page 10 refers to the ECF page number and will be indicated here and elsewhere by the ECF page number following the ECF docket number.

has still failed to establish prejudice to overcome default as to this evidence. "Unless suppressed evidence is material for *Brady* purposes, [its] suppression [does] not give rise to sufficient prejudice to overcome [a] procedural default." *Banks*, 540 U.S. at 698 (internal quotation marks and citation omitted).

Quinton Johnson's statement contained within the search warrant does not constitute evidence that could reasonably be taken to put the whole case in such a different light so as to undermine confidence in the verdict. *Strickler*, 527 U.S. at 290. Although Johnson may not have known about Quinton Johnson's admission until a few days before trial, the record shows that he did maintain that Quinton was in the apartment, and Johnson could have investigated whether Quinton had admitted to such fact. *See Stockton v. Murray*, 41 F.3d 920, 927 (4th Cir. 1994) ("*Brady* does not compel the disclosure of evidence available to the defendant from other sources, including diligent investigation by the defense). The allegedly withheld search warrant affidavit evidence also includes Quinton Johnson's statement that he did not shoot Irving. Br. Supp. Mot. Dismiss Ex. 2 at 17, ECF No. 36-2. Therefore, such evidence would not reasonably "undermine the Commonwealth's allegations that Raheem Johnson was the triggerman." Pet'r's Reply 10, ECF No. 50, even if it does call into question the number of individuals at the apartment on the night in question. Moreover, evidence was introduced at trial about Quinton Johnson's alleged presence in the apartment. For example, Detective Lloyd with the Lynchburg Police

Department testified about the answers Johnson gave in an interview with police, in which he stated that Quinton was in the apartment.  July 16, 2012 Trial Tr. 281. During that same interview, Johnson "never would give [] a straight answer" about who actually fired the gun.  *Id.*  In another interview introduced into evidence, Johnson claimed that all three men — Quinton Johnson, Watts, and himself  — went to the victim's apartment on the night in question.  *Id.* at 307.  Accordingly, I do not find that Johnson has established prejudice as to the statements contained within the search warrant affidavit.[8]

Nor do I find the two alleged instances of undisclosed witness bargaining to give rise to sufficient prejudice.  Franklin did not testify, and I do not find that any alleged promise to Franklin or the alleged "threat[] to indict [Franklin's] wife for murder to induce him to testify" or direction to "'keep quiet' about the agreement," Pet'r's Reply 12, ECF No. 50, by a prosecutor called into question the good faith of the investigation as a whole.  *Id.* (citing *Kyles*, 514 U.S. at 445–46).   Unlike the witness at issue in *Kyles v. Whitley*, Franklin was not essential to the prosecution's investigation against Johnson.  514 U.S. at 445.  Any alleged threat and Franklin's

---

[8] Nor do I find that the sentencing court would "have been less likely to believe that Johnson was the shooter," Pet'r's Reply 11, ECF No. 50, based on the search warrant affidavit.  The statements contained therein contradict Johnson's position that Quinton Johnson shot Irving.  In other words, such evidence, weighed collectively with all of the other *Brady* material, does not bring with it a reasonable probability of a different result. *Kyles*, 514 U.S. at 434.

providing of information about the case did not cause the prosecution to investigate Johnson or affect its decision to charge and proceed to trial against Johnson.

As for the alleged undisclosed bargaining with Kahn, although he testified that he had not been promised anything for this testimony, he did testify that he hoped he would get consideration for his own charges. July 17, 2012 Trial Tr. at 372–73. The prosecutor later even characterized this potential consideration as "motivation" for why Kahn decided to come forward for information about Johnson. *Id.* at 389. Kahn also explained he was motivated because he needed to be with his sick parents. *Id.* at 389–90. Moreover, the defense attorney asked Kahn on cross-examination:

> Q   And you know that [the prosecutor] is not going to promise you anything, correct?
>
> A   Yes.
>
> Q   But you're sure hoping that you can get out to be taking care or to avoid going back to jail at all in order to take care of your parents, right?
>
> A   Yes, that is correct.

*Id.* at 395. The potential for a deal itself was enough to create a motive for Kahn to testify as he did, and the questioning by both the prosecution and defense brought out before the jury the potential issues with the veracity of Kahn's story. In light of this evidence, I do not find that any undisclosed "agreement" could reasonably undermine confidence in the Johnson's verdict or sentence.

Accordingly, I find that Claim IV should be dismissed as being procedurally defaulted.

## III.

Respondent argues that Claims I, II, III, VI, and X fail on the merits.  I agree.

### A.  *Standard of Review.*

The authority of federal courts to issue habeas relief for individuals in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Section 2254 provides that a federal court may not grant a federal habeas petition with respect to claims that were adjudicated on the merits on state habeas review unless the state adjudications were contrary to, or an unreasonable application of, clearly established federal law, or were based on an unreasonable determination of facts.  28 U.S.C. § 2254(d).  A state determination is contrary to clearly established law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  The Supreme Court has held:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

- 26 -

*Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Furthermore, a state determination is an unreasonable application of federal law if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 365. The unreasonable application inquiry is an objective one. *Id.* at 410. Thus, § 2254(d) imposes a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citation omitted). Importantly, a federal court may not grant relief simply because a state court applied clearly established law incorrectly. *Id.* at 24–25. Rather, the habeas applicant must show that the state court applied federal law in an objectively unreasonable manner. *Id.* "Congress meant this standard to be difficult to meet." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam) (internal quotation marks and citation omitted).

### B.  Claims I, III, VI, and XI.[9]

Claims I, III, VI, and XI are various iterations of the allegation the Johnson was denied his right to a mental health expert to assist with the defense's preparation for sentencing as he claims he was guaranteed under *Ake v. Oklahoma*, 470 U.S. 68 (1985), and *McWilliams v. Dunn*, 137 S. Ct. 1790 (2017).

---

[9]  Although Johnson raised Claim XI for the first time in his July 2021 Amended Petition, ECF No. 24, the respondent concedes that the claim relates back to Claims I and III of Johnson's original, timely federal petition.

The state habeas court dismissed this allegation, finding that because the Supreme Court of Virginia rejected Johnson's *Ake* claim on the merits on direct appeal in *Johnson v. Commonwealth*, 793 S.E.2d 326, 330 (Va. 2016), it was not cognizable pursuant to *Henry v. Warden*, 576 S.E.2d 495 (Va. 2003) (finding that issues raised and decided on direct appeal cannot be considered in habeas proceedings).[10]

As a preliminary matter, I note that despite the state habeas court's dismissal, such determination is not an adequate and independent state ground that precludes federal habeas review. *Turner v. Clarke*, No. 1:18CV932 (LMB/MSN), 2018 WL 5929633, at *3 n.6 (E.D. Va. Nov. 13, 2018). Consequently, I will apply § 2254(d)'s deferential review set forth above. *Bell v. True*, 413 F. Supp. 2d 657, 712 (W.D. Va. 2006).

In *Ake*, and later as applied in *McWilliams,* the Supreme Court held that a state must provide a mental health professional to conduct a professional examination and assist in the evaluation, preparation, and presentation of a defense if a defendant can establish that he is indigent, his mental condition is relevant to the potential punishment, and such mental condition is seriously in question. *Ake*, 470 U.S. at

---

[10]    The state habeas court also opined that to the extent Johnson made new allegations under *McWilliams*, which was decided after his direct appeal to the Supreme Court of Virginia but before his petition for writ of certiorari, the claim is defaulted under *Slayton v. Parriga*n, 205 S.E.2d 680. I do not find that Johnson has made any distinct allegations pursuant to *McWilliams*.

80–82; *McWilliams*, 137 S. Ct. at 1794, 1798.  Johnson argues that he satisfied these threshold requirements for expert assistance and contends the Supreme Court of Virginia unreasonably applied *Ake* and its progeny by imposing an additional requirement on him.  I disagree.

> The Supreme Court of Virginia explained in Johnson's direct appeal:
>
> Johnson admitted that he sought the services of a neuropsychologist because there was no other evidence regarding his physiology or psychology.  In other words, Johnson sought the assistance of an expert at the Commonwealth's expense with no idea what evidence might be developed or whether it would assist him in any way.   At best, Johnson's request for a neuropsychologist amounted to a mere hope that favorable evidence would be obtained.  Thus, it cannot be said that Johnson demonstrated a particularized need for the assistance of a neuropsychologist.

*Johnson*, 793 S.E.2d at 330.   In making such finding, the state court relied on Virginia's interpretation of *Ake* as set forth in *Husske v. Commonwealth*, 476 S.E.2d 920 (Va. 1996):

> This Court has recognized that, upon request, the Commonwealth is required to provide indigent defendants with the basic tools of an adequate defense.  However, an indigent defendant's constitutional right to the appointment of an expert, at the Commonwealth's expense, is not absolute.   Rather, an indigent defendant who seeks the appointment of an expert witness, at the Commonwealth's expense, must demonstrate that the subject which necessitates the assistance of the expert is likely to be a significant factor in his defense, and that he will be prejudiced by the lack of expert assistance.   An indigent defendant may satisfy this burden by demonstrating that the services of an expert would materially assist him in the preparation of his defense and that the denial of such services would result in a fundamentally unfair trial. The indigent defendant

who seeks the appointment of an expert must show a particularized
need . . . .

*Johnson*, 793 S.E.2d at 329–30 (quoting *Husske*) (internal quotation marks and
citations omitted).

The state court's finding that Johnson had failed to show a particularized need
for a neuropsychologist expert was not an objectively unreasonable application of
*Ake*'s mandate.  In fact, the language from *Ake* itself supports Virginia's rule:

> We therefore hold that *when a defendant demonstrates* to the trial judge
> *that his sanity at the time of the offense is to be a significant factor* at
> trial, the State must, at a minimum, assure the defendant access to a
> competent psychiatrist who will conduct an appropriate examination
> and assist in evaluation, preparation, and presentation of the defense.

*Ake*, 470 U.S. at 83 (emphasis added).   I find that the Virginia test does not
improperly impose an additional requirement on the defendant, but rather provides
a reasonable context to *Ake*'s threshold requirements that the defendant demonstrate
the significance of this mental condition and that such condition be seriously in
question.  Case law supports this.  For example, in *Page v. Lee*, 337 F.3d 411, 416
(4th Cir. 2003), the Fourth Circuit found that North Carolina's test for assessing
whether a court-appointed psychiatrist is necessary was a reasonable interpretation
of *Ake*.  Part of the North Carolina's test discussed by the Fourth Circuit was that
"[i]n determining whether the defendant has made the *requisite showing of his
particularized need* for the requested expert, the court 'should consider all the facts
and circumstances known to it at the time the motion for psychiatric assistance is

- 30 -

made.'" *Id.* at 415–16 (emphasis added) (citations omitted).   The court quoted the Eleventh Circuit and determined that it is not unreasonable to require a defendant to show a trial court "that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." *Id.* at 416 (internal quotation marks and citation omitted).   And in *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), the Sixth Circuit found that the Ohio Supreme Court's application of *Ake* was not objectively unreasonable.   The Ohio test also requires defendants to make a particularized showing that an expert would aid in the defense and that a denial of the requested expert would result in an unfair trial.   *Id.* at 615 (discussing a requested non-psychiatric expert).   The Sixth Circuit found that "the Ohio Supreme Court simply stated that trial courts have discretion in evaluating the third factor.   We do not believe that this application of *Ake* was objectively unreasonable." *Id.* at 616. Virginia's test is similar to others upholding *Ake*'s mandate.   Consequently, and in light of § 2254(d)'s deferential standard,  I find that Johnson is not entitled to habeas relief on these claims.

*Claims II & X.*[11]

In Claims II and X, Johnson contends that his life sentence violates *Miller v. Alabama*, 567 U.S. 460 (2012).  I disagree.

The Supreme Court held in *Miller* that sentencing schemes mandating life imprisonment without parole for juvenile offenders violates the Eighth Amendment. *Id.* at 479.  In doing so, the Court reasoned that such penalties improperly prevent sentencers from taking into account a defendant's age and other relevant circumstances and disregards the possibility of rehabilitation.  *Id.* at 477–78.  The Court noted that sentencers "must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles."  *Id.* at 489.

Johnson raised these claims on direct appeal, and the Supreme Court of Virginia rejected them on the merits.  The state court found that *Miller* was inapplicable to Johnson's case because he was not sentenced to life in prison without parole because he has the possibility of geriatric release under Virginia Code Ann. § 53.1-40.01.  *Johnson*, 793 S.E.2d at 781.

Johnson now concedes that the Supreme Court has now opined that the Eighth Amendment permits life without parole for juvenile offenders if the sentence is not

---

[11] Although Johnson raised Claim X for the first time in his Amended Petition, ECF No. 24, filed in July 2021, the respondent concedes that the claim relates back to Claim II within Johnson's original, timely federal petition.

mandatory and the sentencer has the discretion to consider mitigating circumstances that occur because of a defendant's youth.  *Jones v. Mississippi*, 141 S. Ct. 1307, 1314 (2021).   He also concedes that Virginia law now provides that persons sentenced to life imprisonment for a felony or felonies committed while the offender was a juvenile are eligible for parole through the enactment of Va. Code Ann. § 53.1-165.1(E).[12]  However, he argues that these claims are still meritorious because the Virginia Parole Board has not identified the criteria it will use to determine parole applications and that "there presently appears to be no competent path by which a Virginia prisoner arrested as a juvenile can qualify for release on parole." Second Am. Pet. 69, ECF No. 44.

The respondent contends that the state court's finding that *Miller* was inapplicable was not objectively unreasonable and also that these claims should fail in light of section 53.1-165.1(E).  The respondent asserts that Johnson may raise a claim in the future and asks this court to dismiss these claims without prejudice to

---

[12]  Va. Code Ann. § 53.1-165.1(E) provides:

[A]ny person sentenced to a term of life imprisonment for a single felony or multiple felonies committed while the person was a juvenile and who has served at least 20 years of such sentence shall be eligible for parole and any person who has active sentences that total more than 20 years for a single felony or multiple felonies committed while the person was a juvenile and who has served at least 20 years of such sentences shall be eligible for parole. The Board shall review and decide the case of each prisoner who is eligible for parole in accordance with § 53.1-154 and rules adopted pursuant to subdivision 2 of § 53.1-136.

his rights to challenge later parole decisions.  In response, Johnson requests that this court hold these claims in abeyance until Johnson applies for parole or to dismiss these claims without prejudice so that Johnson may challenge the future parole decision in this Court, if necessary.  Pet'r's Reply 6, ECF No. 50.

I agree with the respondent that the state court's application of *Miller* to Johnson's case does not entitle Johnson to habeas relief.  The state court found that Johnson's eligibility for geriatric release meant that there was a possibility that his life sentence would be converted to a sentence of approximately forty years, which meant he was not sentenced to life without the possibility of parole.  *Johnson*, 793 S.E.2d at 331.  The state court reasoned that the release program provided "a meaningful opportunity for release akin to parole."  *Id.*  Such interpretation is not an unreasonable application of *Miller*, in which the Supreme Court was concerned with sentencing schemes that mandate the "harshest possible penalty."  *Miller*, 567 U.S. at 479.  This is especially true in light of § 2254(d)'s standard of review, which bars the relitigation of claims decided on the merits absent a decision made contrary to federal law or involving an objectively unreasonable application of such law, "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents."  *Harrington*, 562 U.S. at 102.  In fact, in *Virginia v. LeBlanc*, 137 S. Ct. 1726 (2017) (per curiam), the Supreme Court found that a Virginia court's determination that a life sentence with the possibility of

release through Virginia's geriatric release program was not an unreasonable application the rule pronounced in *Graham v. Florida*, 560 U.S. 48 (2010), a pre-*Miller* case forbidding life sentences without parole for juvenile nonhomicide offenders. *LeBlanc*, 137 S. Ct. at 1728–29. It therefore follows that the state court's application of *Miller* to Johnson's sentence is not objectively unreasonable.

Consequently, there is no need for me to rule on whether section 53.1-165.1(E) comports with *Miller* or to dismiss the claims without prejudice. However, I agree that the enactment of the statute further supports the respondent's position that Johnson's sentence does not violate the Eighth Amendment. *Johnson v. Woodson*, No. 3:13CV404, 2020 WL 1451979, at *6–7 (E.D. Va. Mar. 25, 2020) (finding a petitioner's *Miller* claim to be moot in light of the enactment of Virginia's juvenile parole statute and dismissing the claim without prejudice, but not discussing Virginia's geriatric release program since the crime at issue was a Class 1 felony). Accordingly, I will dismiss Claims II and X with prejudice.

## V.

For the reasons stated, it is **ORDERED** that Respondent's Motion to Dismiss, ECF No. 34 , is GRANTED.

I decline to issue a certificate of appealability because Johnson has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's procedural ruling to be debatable or wrong.

A separate Judgment will be entered herewith.


ENTER:  November 21, 2022

/s/ JAMES P. JONES
Senior United States District Judge